■ In the Matter of BINGHAMTON-JOHNSON CITY JOINT SEWAGE BOARD et al., Appellants, v NEW YORK STATE DEPARTMENT OF ENVIRONMENTAL CONSERVATION et al., Respondents.—Casey, J. Appeal from a judgment of the Supreme Court (Connor, J.), entered January 20, 1989 in Albany County, which dismissed petitioners' application, in a proceeding pursuant to CPLR article 78, to review respondents' determination upgrading the classification assigned to a portion of the Susquehanna River.

Petitioners seek to annul respondents' determination upgrading the classification of a segment of the Susquehanna River from class "C" (suitable for, *inter alia,* fishing and fish

propagation) to class "A" (suitable as, *inter alia,* a source of water supply for drinking, culinary or food-processing purposes). According to petitioners, who hold permits to discharge pollutants into the Susquehanna River *(see,* ECL 17-0801 *et seq.),* respondents' determination is flawed both procedurally and substantively.

Turning first to the procedural issues, we agree with Supreme Court that the rule-making proceeding was in substantial compliance with the regulatory impact and flexibility requirements of State Administrative Procedure Act §§ 202-a and 202-b and the notice requirements of ECL 17-0301. Pursuant to State Administrative Procedure Act § 202-a (1), an agency is required to "consider utilizing approaches which are designed to avoid undue deleterious economic effects or overly burdensome impacts of the rule upon persons directly or indirectly affected by it". The regulatory impact statement prepared by respondents states that "[t]he sole alternative is a 'no action' course of action". Since the proposed reclassification was prompted by the undisputed "hydrogeologic connection" between the relevant segment of the Susquehanna River and a number of municipal wells located on adjacent land, petitioners contend that various alternatives should have been considered in the regulatory impact statement. Specifically, it is claimed that consideration should have been given to relocating the wells, seeking new public water supplies or providing treatment at the wellheads. An agency is only required to consider alternatives "to the extent consistent with the objectives of applicable statutes" (State Administrative Procedure Act § 202-a [1]). The purpose of ECL article 17, which authorizes the classification of State waters *(see,* ECL 17-0301), is to safeguard New York's waters by abating existing pollution and preventing new pollution (ECL 17-0103). We agree with respondents that the alternatives suggested by petitioners are not consistent with this objective.

Next, petitioners contend that a regulatory flexibility analysis was required, pursuant to State Administrative Procedure Act § 202-b, but the statute as written at the time of the rule-making proceeding did not require a regulatory flexibility analysis if the agency finds that the rule "would not impose reporting, recordkeeping or other compliance requirements on small businesses" (State Administrative Procedure Act former § 202-a [3], as renum § 202-b [3], and amended by L 1984, ch 17). Respondents determined that a regulatory flexibility analysis was not required since the reclassification "will not alter an existing program and will not require any new recordkeep-

ing, reporting, professional services or other compliance actions on the part of small business *[sic]"*. Petitioners describe this statement as "conclusory", but we find it sufficient to meet the minimal "indication of the basis for [the agency's] finding" required by the statute at the time of this rulemaking proceeding (State Administrative Procedure Act former § 202-a [3]; *see, Matter of Medical Socy. v New York State Dept. of Social Servs.,* 148 AD2d 144, 146, *lv denied* 74 NY2d 617).

Petitioners also contend that the cost analysis contained in respondents' regulatory impact statement is inadequate since it failed to consider the possibility that petitioners might be required in the future to change their treatment systems in order to meet the standards for class "A" waters. In particular, petitioners point out that the standard for chloroform, which is a byproduct of their chlorination systems, is stricter for class "A" waters than for class "C" waters and that, therefore, they might be required to switch to ozonation instead of chlorination. It is clear from the record that respondents considered the problem of chloroform and, based upon the finding that "[f]inished drinking water which has the Susquehanna as its source is currently well under the maximum allowable level for chloroform", respondents' cost analysis considered only a chloroform monitoring system and did not include the cost of changing treatment methods. We agree with respondents that the statute (State Administrative Procedure Act § 202-a [3] [c]) does not require the inclusion of costs which might possibly occur at some unknown future date.

Petitioners' final procedural objection concerns the notice requirement of ECL 17-0301 (10), but we conclude that the statutory requirements were met by respondents. We also note that petitioners received notice and participated in the public hearing, and there is no claim that any interested party failed to participate in the process due to lack of notice.

Turning to the substantive issues, petitioners contend that a reasonable evidentiary foundation for the determination is lacking and that the determination is arbitrary. While conceding the existence of overwhelming evidence of a "hydrogeologic connection" between the river segment at issue and a number of municipal wells which serve tens of thousands of residents, petitioners maintain that there is no basis to reclassify the segment as class "A" in the absence of proof that river water had actually caused contamination of the public drinking water supplies while the river segment was classified as a class "C" water. The argument is meritless. Classification

is to be made, *inter alia,* "in accordance with considerations of best usage in the interest of the public" (ECL 17-0301 [2]). The reclassification at issue here recognized that the best usage in the public interest was the river segment's actual use as at least an indirect source of drinking water for tens of thousands of people. Clearly, the public's best interest would not be served by waiting until the drinking water is contaminated before the reclassification can be made. Nor would the intent and purpose of ECL article 17 be served by such a requirement *(see,* ECL 17-0101, 17-0103).

Petitioners point out that respondents were required to consider a number of factors in adopting the new classification, including the use of the river segment by petitioners for the disposal of sewage and industrial waste *(see,* ECL 17-0301 [3] [c]). Petitioners contend that since respondents' determination to reclassify the river segment was based upon the river segment's usage for public drinking water purposes, respondents ignored petitioners' use of the river segment for the disposal of sewage and industrial waste. This argument is also meritless. It is clear from the record that respondents were well aware of petitioners' use of the river segment and the benefit to the public from such use. In reclassifying the river segment, respondents evaluated the relevant competing factors and decided to accord controlling weight to one of the factors. Since respondents' judgment involved factual evaluations in the area of their expertise and is supported by the record, we may not substitute our judgment for that of respondents *(see, Flacke v Onondaga Landfill Sys.,* 69 NY2d 355, 363).

We also reject petitioners' contention that respondents' determination to reclassify the river segment at issue was arbitrary since no other allegedly similar river segment was reclassified. The proceeding under review considered only the river segment that was reclassified and, according to respondents, no decision has been made as to what other segments, if any, should be reclassified. Since there is a rational basis in the record for respondents' determination, Supreme Court's judgment should be affirmed.

Judgment affirmed, without costs. Mahoney, P. J., Casey, Weiss, Levine and Harvey, JJ., concur.